# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CP-00509-COA

## CONSOLIDATED WITH

## NO. 2022-CP-01021-COA

SAM ACEIL                                                                      APPELLANT

v.

ALCORN STATE UNIVERSITY AND                                    APPELLEES
MISSISSIPPI BOARD OF TRUSTEES OF STATE
INSTITUTIONS OF HIGHER LEARNING

| | |
|---|---|
| DATE OF JUDGMENT: | 09/08/2022 |
| TRIAL JUDGE: | HON. TOMIKA HARRIS IRVING |
| COURT FROM WHICH APPEALED: | CLAIBORNE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | SAM ACEIL (PRO SE) |
| ATTORNEY FOR APPELLEES: | AMANDA GREEN ALEXANDER |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 08/19/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., LAWRENCE AND WEDDLE, JJ.**

**WILSON, P.J., FOR THE COURT:**

¶1.     Alcorn State University terminated Dr. Sam Aceil's contract and employment as a tenured professor "for insubordination, contumacious conduct and cause." Dr. Aceil later sued Alcorn and the Board of Trustees of the State Institutions of Higher Learning (IHL) for breach of contract. The circuit court granted summary judgment in favor of Alcorn and IHL. Because genuine issues of material fact exist, we reverse and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶2.     Beginning in the 1990s, Aceil was employed as a tenured professor in the Department

of Advanced Technologies at Alcorn. In 1999, Aceil and his wife moved to Atlanta after his wife, a physician, received a job offer at Emory University. After Aceil moved, he commuted between Atlanta and Lorman on a weekly basis. On August 30, 2016, Aceil's wife became ill, and he emailed his department's administrative assistant, stating: "Something came up and I have to be physicall[y] out of the state starting this afternoon and will be back by 9/13. During the period I will be in touch with my classes on-line and if possible by phone." In response, the department's chair, Dr. Jermiah Billa, asked Aceil to submit a leave form for approval. Aceil responded that the matter was "personal" and that he had "thousands" of hours of "sick leave[]" he could use to cover his absence.

¶3. On September 6, 2016, Dr. Ivory Lyles, the Dean of the School of Agriculture, Research, Extension and Applied Sciences, sent Aceil a letter that stated that Aceil was "in violation of the university policy" because he did not inform his supervisor prior to leaving campus, did not request leave, and failed to submit leave forms for approval by human resources. Lyles directed Aceil to contact Billa and "provide official notice and complete human resources paperwork."

¶4. On September 13, 2016, Lyles sent a second letter to Aceil stating that he was "assuming that [Aceil] ha[d] abandoned [his] post" since he had not contacted Lyles or Billa since Lyles's prior letter. As a result, Aceil's pay was adjusted, and he was placed on a "probationary period."

¶5. Aceil returned to campus on September 14 and replied to Lyles's letters. Aceil explained that he had not received and was not aware of either letter until that morning. He

stated that there had been an "emergency" and "no time for advance paperwork[]" but that he had promptly informed Billa and all his students of his absence. Aceil stated that he had continued to perform his "essential . . . duties" by "being available to [his] students," "providing them with instructions[,] and answering their questions [in] a reasonable manner[] under the circumstances." Aceil provided a sample of his communications with his students during his absence and denied that he had "abandon[ed]" his job.

¶6.     On September 20, Aceil submitted a leave request form for the dates August 31 through September 13, indicating that he had been absent due to his wife's illness. On September 20, Lyles sent Aceil another letter requesting "a copy of the medical excuse from the attending physician to support the leave request."

¶7.     On November 8, 2016, Lyles sent another letter to Aceil, informing him that he had been "placed on suspension (leave with pay) pending further review" because he had "stayed away from the campus without timely and proper notice, permission, or approval and failed to fully discharge [his] duties as a faculty member." The letter stated that the "Office of Human Resources denied the basis of [Aceil's] request" for leave. The letter also stated that Aceil still had "not reported on-site to the University to discharge [his] job duties . . . despite emails from [his] chair and dean and Human Resources." Lastly, Lyles stated that Aceil's email communications with his students were insufficient to satisfy Aceil's "contractual duty to discharge all of [his] employment obligations."

¶8.     On July 17, 2017, Aceil received a letter from Dr. Donzell Lee, Alcorn's Provost and Executive Vice President for Academic Affairs, recommending that Aceil's employment be

3

terminated for "contumacious conduct and cause by insubordination and abandonment of [his] duties." The letter alleged that Aceil was "absent from the campus/workplace without receiving appropriate approval for leave" and that he was "insubordinate by resisting directives from supervisors and staff when requested to provide appropriate leave documentation." The letter stated that Aceil still had not provided the requested "medical documentation." The letter further claimed that Aceil "continued to be absent without approval throughout the 2016 fall semester and 2017 spring semester." Finally, the letter stated that Aceil abandoned his duties because "[e]ven though [he] was assigned one face to face class on campus and three online classes, [he] failed to attend the scheduled class on campus and to teach the online classes by using the required Blackboard platform."

¶9. On August 18, 2017, a "due process hearing" was held before a panel of three Alcorn faculty members. Billa testified first. He initially stated to the committee,

> I think it may be appropriate to really look into [Aceil's] side of the story, as well. And, also, Dr. Aceil, recently, he submitted his resignation that he wanted to retire by the end of this academic year. So I think there is that much we have to dig into this whole situation, when he's ready to retire, and who is a senior professor who has accomplished a lot of things in the Department.

When asked whether Billa thought Aceil was insubordinate or abandoned his duties, Billa said that professors have "different modes of teaching students" and that "Aceil provid[es] [the] information to the students." Billa also recounted that Aceil turned in midterm and final grades. Billa was further asked if someone had to be brought in to "cover [Aceil's] classes while he was gone," and Billa responded, "No, not at all." Billa explained that Aceil "pretty much did what he could" and "delivered his information to the students appropriately."

4

When Billa was asked whether or not Aceil used the Blackboard platform, Billa explained "that is up to the teacher. But they can use Blackboard. They can use face-to-face. Those are the two options we have . . . ." Billa testified that "no students" had complained to him that Aceil was not providing the instruction or assistance they needed.

¶10. Lyles testified that in September 2016, Billa had requested that all members of the faculty be in attendance at a certain faculty meeting. Lyles testified that neither he nor Billa knew that Aceil would not be at the meeting. However, Lyles later admitted that the department's administrative assistant had informed Billa that Aceil would be absent. Lyles testified that Aceil initially failed to submit a leave form when one was requested. When asked "how many days [Aceil] abandon[ed] his duties," Lyles responded that he could not give "a specific answer." Instead, he asserted that "there were many days that [he] walked the building, and [Aceil] was not in when office hours were posted." However, he acknowledged that Aceil "could . . . have been somewhere doing other things." Regarding Aceil's alleged failure to use "the required Blackboard platform," Lyles stated that the issue "was lifted to [his] attention by a couple of students in that he would not put the material in Blackboard." Lyles went on to explain, "We do know the material was not there, but the suspicion was the skill and the ability to use Blackboard. So when he needed to communicate with students, he would send e-mails to the students, rather than putting it on the Blackboard so it could be documented and we could know what was going on."

¶11. Aceil testified that when his wife became ill, he informed the department's administrative assistant that he would be out for a period of time. Aceil admitted that he did

5

not provide additional details regarding the emergency, but he stated that he provided documentation from the doctor upon his return to campus. Aceil clarified that because it was an emergency situation, he could not "produce [a] leave of absence in advance." He stated that he was in contact with his students online during his absence and that he "provided instruction for [his] students and . . . was available practically to them 24/7." When asked about the remainder of that semester, Aceil stated that he "was not on campus continuously" but was on campus Monday through Wednesday and sometimes on Thursdays. Aceil stated that it was "kind of understood" on campus that working from home was "allowed" on Fridays. Aceil stated that he emailed course materials to his students rather than using Blackboard "because there were times [when] Blackboard was not available," and he believed that students were "more comfortable" receiving materials via email. Aceil stated that he eventually "followed all the protocol and procedures [Billa and Lyles had] asked [him] to do," and Billa signed his leave request. Aceil did not know why Lyles continued to say otherwise. Lastly, Aceil stated that he was 75 years old and intended to retire at the end of the academic year after teaching at Alcorn for twenty-five years.

¶12. Following the hearing, the faculty hearing committee recommended that Aceil "be allowed to teach the academic year 2017-2018 with the understanding that he [would] retire at the end of that academic year." The committee also recommended that Aceil be informed that he was "required to attend all scheduled classes every day and that there are no 'understood' rules."[1] The committee found that Billa's testimony "was not conclusive in any

---

[1] The committee noted that "Aceil freely admitted that he usually did not come to class on Fridays because it was 'understood' that no one has class on Friday. He also stated

6

way" regarding the charges against Aceil. The committee also noted that Lyles's opinion that Aceil was "guilty of all charges" was based primarily on absenteeism. "[W]hen [Lyles] was questioned by the panel, he could produce no records or documentation to verify his charges." The committee found that "[t]he burden of proof lies with the institution and there is no documentation to support the charges against Dr. Aceil."

¶13. On July 24, 2017, the IHL Board of Trustees signed Aceil's employment contract for the upcoming academic year.

¶14. On September 26, 2017, Alcorn's president, Dr. Alfred Rankins, sent Aceil a letter stating that he found "sufficient grounds to terminate [Aceil's] employment . . . for insubordination, contumacious conduct, and cause." Rankins stated that he disagreed with the hearing committee's recommendation and instead recommended that the IHL Board terminate Aceil's employment. Rankins's decision was based on Aceil's (1) failure to follow the procedures for requesting leave and failure to comply with requests for documentation of his leave, (2) continued absence from campus, and (3) failure to use the required Blackboard platform to teach online classes. On October 16, 2017, Aceil asked the IHL Board to review Rankins's decision. However, in May 2018, the Board denied Aceil's request for review.

¶15. In April 2020, Aceil filed a pro se complaint against Alcorn and IHL in the Hinds County Circuit Court. Aceil alleged that his termination breached his employment contract as a tenured faculty member. The case was later transferred to Claiborne County Circuit

---

that most of the time he did not come on Thursdays, either. He told [the committee] all this with absolutely no compunction."

7

Court, and the defendants filed their answer.[2]

¶16. In a deposition, Aceil testified about his weekly commute between Atlanta and Lorman. Aceil testified that he was typically on Alcorn's campus Monday morning through Thursday evening. He stated that 50% to 75% of his courses, depending on the semester, were online. Aceil admitted, "So, yes, on some Fridays, I was not on campus." However, he explained that his students could call him on Fridays and that he usually gave his students assignments to complete independently on Fridays. Aceil could not recall if he could access his Alcorn email account when he was in Atlanta, but he had the students' personal email and school email addresses. The students had his personal email address as well. He explained that the students "not only [had] access to [him] during the normal hours, but even after hours and even weekends." Aceil also testified that he "actually" used "both" Blackboard and email "to make sure" his students "received" course materials and assignments.

¶17. Aceil testified that on the morning of August 30, 2016, he needed to return to Atlanta due to "an emergency situation" with his wife. He informed the department's administrative assistant about his absence the same day. Aceil completed a leave form "as soon as" he returned to campus and resumed teaching in person two weeks later. Aceil acknowledged that he did not hold class in person on some Fridays for his Monday/Wednesday/Friday class. He stated that he would hold class on Friday "if it was necessary," but "sometimes" he would

[2] Ten months after the defendants answered the complaint, Aceil filed an amended complaint. The circuit court granted the defendants' motion to strike the amended complaint because it was filed without leave of court or the defendants' consent. *See* M.R.C.P. 15(a). On appeal, Aceil argues that the circuit court erred by striking his amended complaint, but his argument consists entirely of the conclusory and erroneous assertion that he was entitled to file an amended complaint because no responsive pleading had been served.

just give the students instructions and assignments to complete on Friday, and the students would "not have any need for [direct] supervision." If he did not hold class on Friday, his students could reach him by phone or email. Aceil also testified that if there was ever a "request for [him] to be on campus on Friday, [he] would be on campus on Friday." Aceil stated that the "department chairman" (Dr. Billa) "did not show up on campus and did his work at home" and that some of the faculty "had all of their courses on Tuesday and Thursday" and did not come to campus the rest of the week.

¶18. On October 2, 2017, as Aceil was about to give a midterm exam for one of his classes, campus police escorted him off campus. Aceil testified that at that point, he had not received and was not aware of Rankins's September 26 letter terminating his employment. Aceil stated that he had planned to retire at the end of the 2017-2018 academic year and that he had retired after Alcorn terminated his employment.

¶19. In June 2022, the defendants moved for summary judgment, arguing that they properly terminated Aceil's contract for cause and had not breached the contract.

¶20. In September 2022, the circuit court granted the defendants' motion, ruling that the defendants properly terminated Aceil's contract because Aceil failed to comply with Alcorn's policies and procedures pertaining to leave and continued to be absent from his scheduled classes after returning to campus.[3]

---

[3] Citing *Board of Trustees of State Institutions of Higher Learning v. Brewer*, 732 So. 2d 934 (Miss. 1999), the circuit court correctly noted that Aceil was entitled to sue for breach of contract. In *Brewer*, the Supreme Court held that a university employee who had an employment contract for a specified term could pursue a breach of contract claim against IHL even if he did not seek reinstatement by appealing his dismissal to circuit court. *Id.* at 937 (¶7). The Supreme Court stated that "due process would be impugned by requiring [the

¶21. Within ten days, Aceil filed a "post-trial motion" asking the court to "reconsider" its order granting summary judgment. Before the court ruled on the motion, Aceil filed a notice of appeal. This Court dismissed Aceil's appeal due to the lack of a final judgment. *Aceil v. Alcorn State Univ.*, 380 So. 3d 958 (Miss. Ct. App. 2024). The circuit court subsequently denied Aceil's motion for reconsideration, and Aceil again filed a notice of appeal.[4]

## ANALYSIS

¶22. We review an order granting summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party. *Karpinsky v. Am. Nat'l Ins.*, 109 So. 3d 84, 88 (¶9) (Miss. 2013). Summary judgment "shall" be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). The non-moving party "may not rest upon the mere allegations or denials of his pleadings," but must respond with competent evidence of "specific facts showing that there is a genuine issue for trial." M.R.C.P. 56(e). "The

---

employee] to pursue a breach of contract claim against [IHL] in an administrative tribunal ultimately answerable to [IHL] itself and subject to [only] limited review [by] the circuit court." *Id.* The employee may instead sue IHL for "breach of contract . . . by filing a complaint in the circuit court." *Id.* The suit is "not an attempt to seek reinstatement through an appeal from the decision of the [u]niversity or [IHL's] approval, but [is] instead a separate breach of contract action for damages." *Id.* at 936 (¶6).

[4] Aceil's prior (dismissed) appeal was consolidated with this appeal for record purposes only. Aceil's second "notice of appeal following the denial of [his] motion to reconsider encompasses both the denial of reconsideration and the underlying judgment," i.e., the circuit court's prior order granting summary judgment. *Woods v. Victory Mktg. LLC*, 111 So. 3d 1234, 1236 (¶7) (Miss. Ct. App. 2013). Accordingly, we review the circuit court's 2022 order granting summary judgment in this appeal.

10

movant bears the burden of *persuading* the [court] that: (1) no genuine issue of material fact exists, and (2) on the basis of the facts established, he is entitled to judgment as a matter of law." *Palmer v. Biloxi Reg'l Med. Ctr. Inc.*, 564 So. 2d 1346, 1355 (Miss. 1990). The non-moving party "should be given the benefit of *every reasonable doubt*," and "[i]n any case where doubt exists as to whether there is a genuine issue of material fact, the trial judge should err on the side of denying the motion and permitting a full trial on the merits." *Renner v. Retzer Res. Inc.*, 236 So. 3d 810, 815 (¶21) (Miss. 2017) (brackets and quotation marks omitted).

¶23. "A breach-of-contract case has two elements: (1) the existence of a valid and binding contract, and (2) a showing that the defendant has broken, or breached it." *Gulf Coast Hospice LLC v. LHC Group Inc.*, 273 So. 3d 721, 743 (¶77) (Miss. 2019). It is undisputed that Aceil had a valid employment contract as a tenured faculty member. The defendants argue that they validly terminated Aceil's contract based on language in the contract stating that it could be terminated "at any time" for "[m]alfeasance, inefficiency or contumacious conduct" or "[f]or cause."

¶24. During the due process hearing before a panel of Alcorn faculty members, Billa testified that Aceil "ha[d] accomplished a lot" at Alcorn and that it was "appropriate to really look into his side of the story." When asked whether Aceil's conduct rose to the level of "insubordination or abandonment of duties," Billa stated that was "kind of a tricky question to answer." Billa testified that there are "different modes of teaching students" and that "teaching-wise, [Aceil was] providing his duties." Billa stated that it was never necessary

11

to bring someone else in to cover Aceil's classes and that none of Aceil's students ever complained that they were not receiving the teaching or assistance they needed. Billa also stated that Aceil always submitted students' grades on time and was "always on time with respect to any requests we make to him."

¶25. When the faculty committee questioned Lyles at the due process hearing, Lyles could not explain "the procedure" that faculty members should follow if they have "an emergency situation" involving a family illness. When Lyles was asked "how many days" Aceil "actually missed" during the prior academic year, Lyles stated, "I can't give you a specific answer on that. . . . [T]here were many days that I walked the building, and he was not in when office hours were posted. *That's not to say that he could not have been somewhere doing other things . . . .*" (Emphasis added). Lyles said that Billa or someone else in the department might be able to provide a "specific number of hours or days" Aceil was absent, but no such evidence was offered. Lyles went on to testify that he had "major concerns[]" about [Aceil's] attendance," but then he stated that his concerns were "unfounded," based on "rumors," and were not something that "anyone [could] act upon." Lyles did not explain what he meant when he said that his concerns were "unfounded." Finally, Lyles stated that "a couple of students" said that Aceil "would not put [course] material [on] Blackboard." Lyles said this created a "suspicion" about Aceil's "skill and ability to use Blackboard," although there was "no hardcore fact."

¶26. Billa and Lyles were the only witnesses other than Aceil to testify at the due process hearing. The faculty hearing committee aptly noted that Billa "was cooperative" but

provided "no information . . . to indicate the charges against Dr. Aceil were valid." The committee also found that Lyles could produce no documentation to verify the charges against Aceil. Thus, the committee ultimately concluded that Alcorn had not met its burden of showing that Aceil should be terminated, and the committee instead recommended that Aceil be allowed to teach during the 2017-2018 academic year.

¶27. To be sure, the Alcorn Faculty Handbook states that "[f]aculty members are expected to do the following as a condition of employment . . . : 1. Meet all scheduled classes on time; 2. Attend faculty meetings; 3. Maintain approved office hours for conferences and academic advisement . . . . " Aceil freely admitted that he left campus to deal with a family emergency and sometimes did not hold class on Friday. However, as the faculty hearing committee found, the evidence is not clear as to how many days Aceil missed or how often he was unavailable during office hours. Moreover, Aceil testified that his practices regarding classes and office hours were consistent with his colleagues' practices and that he was always available to his students. In addition, Aceil's direct supervisor, Billa, testified that no students ever complained that they were not receiving the necessary teaching or assistance from Aceil. Billa further testified that, "teaching-wise," Aceil was fulfilling his duties.

¶28. In short, the evidence is unclear as to how often Aceil was absent. Aceil admittedly failed to hold in-person classes on some or many Fridays and left campus to deal with a family emergency without prior approval. But Aceil's testimony is some evidence that his teaching practices and methods were consistent with the practices of at least some of his colleagues. The issue raised by the defendants' summary judgment motion is *not* whether

13

Aceil failed to hold some of his classes in person. He clearly did. Rather, Aceil's contract provided, as relevant here, that he could be terminated only for "[m]alfeasance, inefficiency or contumacious conduct" or "[f]or cause." Although Rankins and Lyles disagreed, the Alcorn faculty hearing committee evidently felt that Aceil's conduct did not rise to that level. Aceil's direct supervisor, Billa, also expressed uncertainty as to whether Aceil's conduct rose to the level of misconduct warranting termination. Under these circumstances, there is a triable issue of fact as to whether the defendants properly terminated Aceil's employment for malfeasance, inefficiency, contumacious conduct, or cause. Accordingly, we reverse the grant of summary judgment and remand the case for further proceedings consistent with this opinion.[5]

¶29.   **REVERSED AND REMANDED.**

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. McDONALD, J., NOT PARTICIPATING.**

---

[5] *See, e.g.*, *Venture Inc. v. Harris*, 307 So. 3d 427, 432 (¶¶15-16) (Miss. 2020) ("This Court has continuously held the [trial] court cannot try issues of fact on a Rule 56 motion; it may only determine whether there are issues to be tried. Summary judgment is inappropriate where there are undisputed facts which are susceptible to more than one interpretation. If the undisputed facts can support more than one interpretation, then this Court, will not hesitate to reverse and remand for a trial on the merits." (citations, quotation marks, and ellipsis omitted)).